# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                      No. CR 10-0572 JB

MIGUEL MADRID-GOMEZ,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed April 16, 2010 (Doc. 15). The Court held a sentencing hearing on April 30, 2010. The primary issues are: (i) whether the Court should sustain Defendant Miguel Madrid-Gomez' objection to the 2 criminal history points assessed against him in the Presentence Investigation Report ("PSR") for the convictions in paragraphs 21 and 23 of the PSR because he was not represented by counsel in those cases; (ii) whether the Court should sustain Madrid-Gomez' objection to the 1 criminal history point assessed against him in paragraph 29 of the PSR because the United States Sentencing Commission recently voted to recommend deletion of the provision of the Guidelines providing for recency points; (iii) whether the Court should grant Madrid-Gomez a downward departure for over-representation of his criminal history; and (iv) whether the Court should grant Madrid-Gomez a variance. For the reasons stated on the record and for further reasons consistent with those stated, the Court will: (i) overrule Madrid-Garcia's objections to the PSR; (ii) deny his request for a downward departure; (iii) grant his request for a variance; (iv) and sentence Madrid-Gomez to 16 months in the custody of the Bureau of Prisons.

## **PROCEDURAL BACKGROUND**

Madrid-Gomez pled guilty to unlawful entry and deportation under a non-standard fast-track plea agreement, in which the parties stipulated to a United States Sentencing Guidelines criminal-offense level of 9 pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. In his sentencing memorandum, Madrid-Gomez objects to the points assessed against him for the convictions listed in paragraph 21of the PSR, to which he pled nolo contendere to a DUI charge, and in paragraph 23 to the PSR, to which he pled guilty to a DUI-with-property-damage charge, because Madrid-Gomez did not have counsel when he made either plea, nor did he knowingly and voluntarily waive his constitutional right to counsel. See Sentencing Memo. at 1. He argues that the Supreme Court of the United States' holding in Alabama v. Shelton, 122 S. Ct. 1764 (2002), extended the Sixth Amendment right to counsel set forth in Gideon v. Wainwright, 372 U.S. 335 (1963), to misdemeanors where either any sentence of actual incarceration was imposed or where a probated or suspended sentence of imprisonment was imposed. See Sentencing Memo. at 4-5 (citing Alabama v. Shelton, 122 S. Ct. at 1772.). Madrid-Gomez argues that, absent a valid waiver of the right to counsel in a misdemeanor case, if the defendant is sentenced to prison, the conviction is unconstitutional. See Sentencing Memo. at 5 (citing United States v. Haymer, 995 F.2d 550, 552 (5th Cir. 1993)). Madrid-Gomez contends that he was not advised of his right to counsel before he entered pleas in his two DUI convictions, and therefore those convictions are constitutionally invalid and should not be counted in his criminal history points. See PSR ¶¶ 21, 23, at 5, 9; Sentencing Memo. at 6. Madrid-Gomez also argues that the PSR's calculation of his criminal history points over-represents his actual criminal history and that he should receive a downward departure. See Sentencing Memo. at 7.

Madrid-Gomez also objects to the 2 points added to his criminal history for committing this

federal offense within two years of his release from custody on a previous conviction, see PSR ¶ 29, at 9, because the United States Sentencing Commission recently voted to delete Section 4A1.1(e), upon which the allocation of recency points is based.   At the hearing, Philip Medrano, Madrid-Gomez' attorney, alerted the Court that the PSR erroneously confused the point allocation in paragraphs 29 and 30.   See Transcript of Hearing at 20:4-12 (taken April 30, 2010) (Medrano)("Tr.").[1]  Section 4A1.1(e) states that if 2 points are added under § 4A1.1(d), then 1 point is added pursuant to § 4A1.1(e).  According to paragraph 29, Madrid-Gomez received 2 points for committing the instant offense within two years of his release from custody for a previous offense and paragraph 30 states that he received 1 point for committing the instant offense while under a criminal justice sentence of probation.   The PSR should state that he received 1 point in paragraph 29, pursuant to § 4A1.1(e), and received 2 points in paragraph 30, pursuant to § 4A1.1(d). Thus, Madrid-Gomez' objection is that the 1 point pursuant to § 4A1.1(e) should not be counted, even though the sentencing memorandum objected to the 2 points reflected in the PSR. Madrid-Gomez argues that the recent vote to amend the guidelines and delete the recency point provision in § 4A1.1(e) is likely to be approved by Congress because it adds nothing to the predictive quality of the criminal history score.  See Sentencing Memo. at 9-10.  In addition to his objections and request for a downward departure, Madrid-Gomez further argues that the Court should vary from the guidelines, based on the factors set forth in 18 U.S.C. § 3553(a), especially the reduced need to deter him because, according to him, his criminal history points have been over-represented.  See Sentencing Memo. at 7.

In response, the United States argues that Madrid-Gomez fails to demonstrate that the

---

[1] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

convictions in paragraphs 21 and 23 of the PSR are constitutionally infirm.  See United States'
Response to Defendant's Sentencing Memorandum Filed April 16, 2010 (Doc. 15) at 2, filed
April 22, 2010 (Doc. 16).  The United States concedes that "[a] defendant whose previous
conviction is constitutionally invalid because he was denied the right to counsel may challenge the
use of the conviction to enhance his sentence under the Guidelines."  United States' Response at 2
(citing United States v. Cruz-Alcala, 338 F.3d 1194, 1196-97 (10th Cir. 2003)).  The United States
argues, however, that Madrid-Gomez bears the burden of proving, by a preponderance of the
evidence, that his convictions were unconstitutional, because a presumption of regularity attaches
to final judgments, even when a waiver of constitutional rights is at issue.  See United States'
Response at 2 (citing United States v. Quintata-Ponce, 129 Fed. Appx. 473, 475 (10th Cir. 2005)).
Because Madrid-Gomez presented no evidence beyond his own statements in his sentencing
memorandum, the United States argues the Court should consider the convictions in paragraphs 21
and 23 in assessing criminal history points.  The United States also argues that nothing about the
nature or circumstances of Madrid-Gomez' illegal re-entry offense warrants a variance.  See United
States' Response at 3.  It contends that Madrid-Gomez' lengthy criminal history and his prior
deportation -- less than three months before he illegally re-entered the United States again
-- demonstrate that a variance is not warranted.  See United States' Response at 4.

At the hearing, Mr. Medrano stated that he had been provided that morning with proof of
attorney representation in the conviction listed in paragraph 23 of the PSR, and therefore
withdrew his argument that the point assessed for that conviction should not be considered.
See Tr. at 2:25-3:2 (Medrano).  He argued, however, that Madrid-Gomez still represented to him
that he did not have counsel for his conviction in paragraph 21 of the PSR, nor did he sign a waiver
of consent.  See id. at 3:3-8 (Medrano).   Moreover, when Probation Officer Sharla Koch made

contact with the Hendry County Circuit Court Clerk's Office in Labelle, Florida, she was advised that Madrid-Gomez was not represented by counsel.  See Addendum to the Presentence Report. Assistant United States Attorney Holland Kastrin responded that, even if the point assessed for the conviction in paragraph 21 was not counted, Madrid-Gomez would still be within the point range for a category V criminal history.  See Tr. at 5:25-6:5 (Kastrin).  Nevertheless, Ms. Kastrin argued, the self-serving assertion that Madrid-Gomez was without counsel and did not waive counsel does not meet the burden to establish deprivation of counsel.  See Tr. at 6:5-13 (Kastrin).

## THE SIXTH AMENDMENT RIGHT TO COUNSEL

In Gideon v. Wainwright, 372 U.S. 335 (1963), the Supreme Court of the United States held that the Sixth Amendment's  guarantee of the right to appointed counsel applies to state criminal prosecutions by incorporation through the Fourteenth Amendment.  See 372 U.S. at 344-45. Clarifying the scope of the right to counsel, the Supreme Court later held that an indigent defendant must be appointed counsel in any criminal prosecution, "that actually leads to imprisonment even for a brief period," regardless of its classification as a misdemeanor or a felony.  Argersinger v. Hamlin, 407 U.S. 25, 33 (1972).  Seven years later, in Scott v. Illinois, 440 U.S. 367 (1979), the Supreme Court established the outer limit of the right to counsel enunciated in Argersinger v. Hamlin.  See Scott v. Illinois, 440 U.S. at 373.  The Supreme Court of Illinois had declined to extend Argersinger v. Hamlin to the defendant where he was "charged with a statutory offense for which imprisonment upon conviction is authorized but not actually imposed upon the defendant." Scott v. Illinois, 440 U.S. at 369.  The Supreme Court affirmed, explaining: "Even were the matter res nova, we believe that the central premise of Argersinger -- that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment -- is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of

counsel." <u>Scott v. Illinois</u>, 440 U.S. at 373.  The Supreme Court held that the Sixth and Fourteenth Amendments do not entitle an indigent defendant to trial counsel where he was convicted of theft and fined $ 50.00 after a bench trial.  <u>See</u> 440 U.S. at 367, 368 ("We therefore hold that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense.").

The next major development in this area of law was <u>Alabama v. Shelton</u>, 535 U.S. 654 (2002).  The defendant was sentenced to thirty-days imprisonment after a conviction for misdemeanor assault; the trial court suspended the sentence, and placed the defendant on two years unsupervised probation.  <u>See</u> 535 U.S. at 658.  If the defendant violated his terms of probation, he would be subject to the thirty-days imprisonment.  <u>See</u> 535 U.S. at 658.  The defendant appealed his conviction and sentence on Sixth Amendment grounds.  <u>See</u> 535 U.S. at 658.  The Supreme Court held that a suspended sentence which may end up in actual deprivation of a person's liberty fit under the "actual imprisonment" rule in <u>Scott v. Illinois</u> and <u>Argersinger v. Hamlin</u>, and thus a suspended sentence entitled the defendant to the benefit of counsel.  <u>Alabama v. Shelton</u>, 535 U.S. 674.  The Supreme Court observed that, "[o]nce the [suspended] prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense," and thus ends up having his or her liberty deprived as a result of an uncounseled conviction -- "precisely what the Sixth Amendment . . . does not allow."  535 U.S. at 662.

## **CONSTITUTIONAL CHALLENGES TO PRIOR CONVICTIONS AT SENTENCING**

In <u>Custis v. United States</u>, 511 U.S. 485 (1994), the Supreme Court found that, for purposes of the penalty enhancements for prior convictions which are imposed by the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e), a defendant in a federal sentencing proceeding has no

right to collaterally attack the validity of his previous state convictions, with the sole exception of convictions obtained in violation of the right to counsel. See Custis v. United States, 511 U.S. at 487. The Supreme Court explained: "There is thus a historical basis in our jurisprudence of collateral attacks for treating the right to have counsel appointed as unique, perhaps because of our oftstated view that 'the right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.'" 511 U.S. at 494-95 (quoting Powell v. Alabama, 287 U.S. 45 (1932)). In Burgett v. Texas, 389 U.S. 109 (1967), the Supreme Court held that the admission of a prior criminal conviction that is constitutionally infirm under the standards of Gideon v. Wainwright, 372 U.S. 335 (1963), is inherently prejudicial, and to permit use of such a tainted prior conviction for sentence enhancement would undermine the principle of Gideon v. Wainwright. See Burgett v. Texas, 389 U.S. at 115 ("Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.").

In United States v. Garcia, 42 F.3d 573 (10th Cir. 1994), the United States Court of Appeals for the Tenth Circuit, relying on the Supreme Court of the United States' holding in Custis v. United States, held that, in a sentencing proceeding under the Guidelines, a defendant may not collaterally attack a prior conviction except on the ground of a complete denial of counsel. See 42 F.3d at 581. The Tenth Circuit has since consistently held that, with the exception of a collateral attack based on complete denial of counsel, a district court cannot consider a collateral attack on a prior conviction when sentencing a defendant. See United States v. Cousins, 455 F.3d 1116, 1125 (10th Cir.)(stating that "an exception to this general rule [barring collateral attacks of prior convictions] at sentencing is that challenges to the constitutionality of a conviction based upon a violation of the right to counsel are permitted in sentencing proceedings, even though the defendant is attacking the prior

state conviction collaterally in federal court."), cert. denied, 549 U.S. 866 (2006); United States v. Delacruz-Soto, 414 F.3d 1158, 1167 (10th Cir. 2005)(holding that, "with the exception of a collateral attack based on the complete denial of counsel, a district court sentencing a defendant under 8 U.S.C. § 1326(b)(2) and U.S.S.G. § 2L1.2(b)(1)(A) cannot consider a collateral attack on a prior conviction."); United States v. Cruz-Alcala, 338 F.3d at 1197 (stating the holding of United States v. Garcia). In United States v. Molina-Barajas, 47 Fed. Appx. 552 (10th Cir. 2002), the Tenth Circuit stated:

> Because defendant was imprisoned on the California conviction, there is no question he had a right to counsel under the Sixth Amendment. There is also no question that defendant may collaterally attack the use of the California conviction to enhance his sentence in this case if the conviction was obtained in complete violation of his right to counsel.

47 Fed. Appx. at 555 (citations omitted). See United States v. Black, 37 Fed. Appx. 654, 655 (4th Cir. 2002)(stating that "because Black was denied counsel in connection with her larceny conviction, she could challenge the constitutional validity of that conviction at sentencing.").

In United States v. Cruz-Alcala, the defendant challenged the district court's use of three prior misdemeanor convictions to enhance his sentence under the Guidelines because, he argued, the convictions were constitutionally invalid as he was denied the right to counsel. See 338 F.3d at 1196. The Tenth Circuit found that the defendant had failed to establish that his prior misdemeanor convictions were constitutionally infirm because evidence contradicted his testimony that he did not waive his right to counsel in his prior convictions. See 338 F.3d at 1198. The Tenth Circuit noted that it was undisputed that the defendant had a right to counsel in the prior proceedings "because each resulted in a sentence of imprisonment," and it was also undisputed that the defendant was not represented by counsel in those proceedings. 338 F.3d at 1196-97 (citing Scott v. Illinois, 440 U.S. at 373-74). The Tenth Circuit noted that the United States did not dispute the defendant's

right to challenge the constitutionality of his convictions. See 338 F.3d at 1197. The Tenth Circuit

stated:

> In United States v. Garcia, 42 F.3d 573, 581 (10th Cir. 1994), this court, relying on Custis v. United States, 511 U.S. 485, 496-97 (1994), held that in a sentencing proceeding under the Guidelines a defendant may not collaterally attack a prior conviction except on the ground of a "complete denial of counsel." See also United States v. Simpson, 94 F.3d 1373, 1381 (10th Cir. 1996)(barring collateral attack based on involuntariness of guilty plea). There is, however, no precedential authority from this court regarding whether an involuntary or unknowing waiver of counsel causes a "complete denial of counsel." But cf. United States v. Molina-Barajas, 47 Fed. Appx. 552 (10th Cir. 2002)(unpublished). Because the Government has not raised the point, we will not resolve the matter here.

United States v. Cruz-Alcala, 338 F.3d at 1197. Because the right to counsel can be waived,

however, the Tenth Circuit focused on whether the defendant knowingly, voluntarily, and

intelligently waived his right to counsel in the misdemeanor proceedings. See 338 F.3d at 1197.

The United States submitted waiver forms that the defendant signed, so the Tenth Circuit affirmed

the district court's finding that the defendant had validly waived his right to counsel. See 338 F.3d

at 1198. The Tenth Circuit thus found that the convictions were not constitutionally infirm and

could be used to enhance the defendant's sentence. See 338 F.3d at 1198.

## 1. Convictions Violating the Sixth Amendment Right to Counsel Are Not Counted in the Defendant's Criminal History Score.

Application Note 6 to U.S.S.G. § 4A1.2 provides:

> 6. Reversed, Vacated, or Invalidated Convictions. -- Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted. With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g., 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions).

> Nonetheless, the criminal conduct underlying any conviction that is not counted in the criminal history score may be considered pursuant to § 4A1.3 (Adequacy of

Criminal History Category).

U.S.S.G. § 4A1.2, comment. n.6 (Nov. 2009).[2]  While the plain language of Application Note 6 to

U.S.S.G. § 4A1.2 would suggest that an unconstitutional prior conviction -- including uncounseled

misdemeanor sentences for which jail time was imposed -- must be collaterally attacked successfully

before the sentencing, not at the sentencing, the Tenth Circuit has used comment note 6 to find that

the Guidelines -- not just the Court -- prohibits consideration of the uncounseled convictions in the

defendant's criminal history.  See United States v. Cisneros-Cabrera, 110 F.3d 746, 748 (10th Cir.

1997)("Most notably, Application Note 6 to Guidelines § 4A1.2 bars the consideration of

convictions that 'have been ruled constitutionally invalid' for the purposes of determining a

defendant's criminal history count."); United States v. Anderson, No. 93-4008, 1994 U.S. App.

LEXIS 9193, at *12 (10th Cir. Mar. 23, 1994)("Convictions which have been found constitutionally

invalid may not be counted in the criminal history score."); cf  U.S.S.G. § 4A1.2, comment. n.6

("Sentences resulting from convictions that . . . have been ruled constitutionally invalid in a prior

case are not to be counted.").  In United States v. Cruz-Alcala, the Tenth Circuit noted that, "[o]nce

the prosecution establishes the existence of a conviction, the defendant must prove by a

preponderance that the conviction was constitutionally infirm."  338 F.3d at 1197 (internal

quotations omitted).  That is, a "presumption of regularity attaches to final judgments, even when

the question is waiver of constitutional rights."  Id. (internal quotations omitted).

In United States v. Cousins, the defendant objected to the PSR's criminal history

recommendation, arguing that 1 of the 2 criminal history points accorded to him was a result of a

---

[2] "Commentary that explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." United States v. McClatchey, 316 F.3d 1122, 1127 (10th Cir. 2003).

misdemeanor conviction during which he alleged he was deprived the right to counsel.  See 455 F.3d at 1121.  The Tenth Circuit found that the conviction the defendant was collaterally challenging at his sentencing was analogous to Alabama v. Shelton "in the sense that the sentence imposed by the South Carolina court was essentially a suspended sentence: either Defendant paid the $ 500 fine or he went to jail for 30 days."  United States v. Cousins, 455 F.3d at 1126.  The Tenth Circuit held that, "by depriving [the defendant] of the benefit of counsel, South Carolina appears to have violated [the defendant's] Sixth Amendment rights."  455 F.3d at 1126.  The Tenth Circuit went on to hold: "Having concluded that the South Carolina conviction violated [the defendant's] Sixth Amendment rights, we must also conclude that it was error for the district court to use this conviction in calculating [the defendant's] criminal history category."  455 F.3d at 1127.

## 2. Uncounseled Misdemeanors Where No Imprisonment Was Imposed Are Counted in the Defendant's Criminal History.

The Supreme Court has held that, under the Sixth and Fourteenth Amendments, a defendant may not be sentenced to a term of imprisonment unless he has been afforded the right to assistance of counsel in his defense.  See Scott v. Illinois, 440 U.S. 367, 373-74 (1979); United States v. Cousins, 455 F.3d 1116, 1125-26 (10th Cir. 2006).  The right to counsel, however, "does not extend to non-felony trials if no term of imprisonment is actually imposed."  M.L.B. v. S.L.J., 519 U.S. 102, 113 (1996).

With respect to uncounseled misdemeanor sentences, the Supreme Court of the United States, in Nichols v. United States, 511 U.S. 738 (1994), held that a court may rely upon an uncounseled conviction, where no sentence of imprisonment is imposed for that conviction, to enhance a sentence for a subsequent offense, even though that later sentence entails imprisonment. See 511 U.S. at 746-47. The Supreme Court stated:

> Reliance on such a conviction is also consistent with the traditional understanding of the sentencing process, which we have often recognized as less exacting than the process of establishing guilt. . . .  Traditionally, judges have considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant.  One such important factor . . . is a defendant's prior convictions.

511 U.S. at 747.  Reflecting the Supreme Court's holding in Nichols v. United States, the background note to U.S.S.G. § 4A1.2 states: "Prior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed."  U.S.S.G. § 4A1.2.  See United States v. Molina-Rascon, 296 Fed. Appx. 653, 655 (10th Cir. 2008)(stating that "the background to USSG § 4A1.2 provides that prior uncounseled misdemeanor sentences where imprisonment is not imposed, such as Molina-Rascon's fine for shoplifting, count toward the criminal history score."); United States v. Peshlakai, 618 F. Supp. 2d 1295, 1332-33 (D.N.M. 2007)(Browning, J.)(overruling the defendant's objection to 1 criminal history point for an uncounseled misdemeanor shoplifting conviction "because even though it was an uncounseled misdemeanor, no term of imprisonment was imposed as part of the sentence.").  "To qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence (or, if the defendant escaped, would have served time)."  U.S.S.G. § 4A1.2, comment. n.2 (Nov. 2009).

The Tenth Circuit, in United States v. Jackson, 493 F.3d 1179 (10th Cir. 2007), stated: "Our case law and repeated guidance from the Supreme Court . . . instruct that a federal sentencing court may, consistent with the Sixth Amendment, take into account a defendant's previous uncounseled misdemeanor convictions, together with any sentence that does not result in actual imprisonment."  493 F.3d at 1180.  In that case, the defendant argued that the district court erred by considering his prior uncounseled state misdemeanor sentences for domestic violence and the negligent use of a

firearm, and that the error implicated his Sixth-Amendment right to counsel.  See 493 F.3d at 1180.

Before the district court, the United States conceded that the defendant failed to receive counsel in

his 1995 state court case resulting in the challenged convictions, that he was entitled to such

assistance, and, thus, that the conditional prison sentence he received violated the Sixth Amendment.

The United States argued, however, that the convictions, together with the portion of the sentence

imposing a fine, were both constitutional and sufficient to sustain the assessment of a criminal

history point.  The district court agreed, holding that, even after excising the portion of the sentence

relating to imprisonment derived in violation of his Sixth Amendment right to counsel, the

defendant's convictions and fine merited the assessment of the contested criminal history point.  See

493 F.3d at 1181.  The Tenth Circuit explained that the defendant's misdemeanor sentence involved

aspects of Argersinger v. Hamlin,  Scott v. Illinois, and Nichols v. United States, explaining:

> On the one hand, it includes a conditional prison sentence, something that falls on
> the "actual imprisonment" side of the ledger after Shelton.  On the other hand, it
> involves the payment of a fine, something that, under Scott, poses no Sixth
> Amendment problems and, pursuant to Nichols, may be employed as a sentencing
> enhancement.

United States v. Jackson, 493 F.3d at 1182-83.  The Tenth Circuit found that, "to hold the conviction

and fine portion of a sentence infirm, would be to relieve the defendant from any consequence of

his or her actions despite guidance from Scott and Nichols and now Shelton that uncounseled

misdemeanor convictions and non-prison sentences may be given respect and effect consistent with

the Sixth Amendment's remedial purposes."  493 F.3d at 1183.  In addition to Supreme Court

precedent which established that the district court may consider non-imprisonment uncounseled

misdemeanor convictions, the Tenth Circuit also noted that the Guidelines "take account of factors

unique to the federal sentencing process that at least mitigate concerns about the reliance on prior

uncounseled misdemeanor convictions and misdemeanor sentences in subsequent sentencing

proceedings," including: (i) only 1 criminal history point is added for prior sentences resulting in less than sixty days imprisonment; (ii) the district court "remains free to find that a defendant's criminal history score incorporating an uncounseled misdemeanor sentence 'over-represents the seriousness of [his or her] criminal history or the likelihood that the defendant will commit further crimes' and, on that basis, depart from the Guidelines' suggested sentencing range as the court sees fit"; and/or (iii) the district court may grant a variance.  United States v. Jackson, 493 F.3d at 1185. After its thorough analysis of Supreme Court precedent and the Guidelines, the Tenth Circuit held:

> Our case law and repeated guidance from the Supreme Court, however, instruct that a federal sentencing court may, consistent with the Sixth Amendment, take into account a defendant's previous uncounseled misdemeanor convictions, together with any sentence that does not result in actual imprisonment.  Though constrained to disregard the portion of his uncounseled misdemeanor sentence resulting in a prison term, the district court was therefore free to devise a sentence taking account of Mr. Jackson's prior misdemeanor convictions and associated fine.  Proceeding as it did on just this course, we affirm the district court's judgment.

493 F.3d at 1179.

After the Supreme Court's decision in Alabama v. Shelton, the United States Court of Appeals for the Fifth Circuit, in United States v. Perez-Macias, 335 F.3d 421 (5th Cir.), cert. denied, Perez-Macias v. United States, 540 U.S. 994 (2003), considered whether an uncounseled conviction resulting in a stand alone sentence of probation for illegally reentering the United States may be employed as a sentencing enhancement in a subsequent case, even though a violation of the terms of the original probationary sentence might result in a prison term.  The Fifth Circuit explained that the imposition of probation itself, without more, does not trigger the Sixth Amendment because, "[i]f a defendant receives only a sentence of probation, he is sentenced to community release with conditions; he does not receive a sentence of imprisonment."  335 F.3d at 426-27.  The Fifth Circuit found that, while a sentence of probation might later become invalid, in conformity with Argersinger

v. Hamlin and Alabama v. Shelton, it is not constitutionally invalid until and unless it results in a sentence of actual imprisonment.  See 335 F.3d at 426-27.  Although the Tenth Circuit did not reach the issue in United States v. Jackson whether a sentence of probation, without more, triggers the Sixth-Amendment right to counsel, in discussing the decision in United States v. Perez-Macias, the Tenth Circuit stated: "Though the issue is of course one we need not decide today, the Fifth Circuit's reasoning illustrates the continuing uniformity of circuit views regarding the focus of the right and remedy afforded by the Sixth Amendment."  493 F.3d at 1185.

In United States v. Pollard, 389 F.3d 101 (4th Cir. 2004), cert. denied, Pollard v. United States, 125 S. Ct. 1618 (2005), the defendant was charged with DUI and reckless driving, appeared before a magistrate judge without counsel, and without waiving his right to counsel, pled guilty, and was sentenced to one year of supervised probation with conditions and ordered to pay a $250.00 fine and $25.00 special assessment.  See 389 F.3d at 102.  Eleven days later, the defendant was again arrested for DUI, which violated the conditions of his probation.  He was appointed counsel, who petitioned to vacate the underlying sentence of probation on the ground that the defendant had not been appointed counsel, which the magistrate judge denied, sentencing the defendant to continue his probation.  On appeal to the district court judge, the defendant argued that his uncounseled guilty plea resulting in a sentence of probation violated his Sixth Amendment right to counsel, relying on Alabama v. Shelton.  See 389 F.3d at 102.  The district court found that a suspended sentence of imprisonment was not the same as probation.  See id. at 103.  On appeal, the United States Court of Appeals for the Fourth Circuit found that "to adopt a broad rule that the right to counsel is triggered whenever such conditions [that render a defendant vulnerable to imprisonment should he disobey those conditions] are imposed would require us to ignore the limiting principles of Scott." United States v. Pollard, 389 F.3d at 105.  The Fourth Circuit found that Alabama v. Shelton did not

hold that uncounseled convictions resulting in probation violate the Sixth Amendment, as the

defendant argued it should hold, explaining:

> First, Shelton expressly reserved the question of whether uncounseled defendants may receive stand-alone sentences of probation. See Shelton, 535 U.S. at 672-73 (declining to consider whether "probation uncoupled from a prison sentence should trigger no immediate right to appointed counsel" because there was "not so much as a hint . . . in the decision of the Supreme Court of Alabama, that Shelton's probation term is separable from the prison term to which it was tethered"). Second, Shelton made very clear that it was applying -- not abandoning -- the bright-line, "actual imprisonment" rule of Argersinger and Scott. The Shelton Court characterized "the Argersinger-Scott 'actual imprisonment' standard" as "the controlling rule" and stated that it was "applying the 'actual imprisonment' rule to the case before [it]." Id. at 662. We believe that in order to adopt the broad interpretation of Shelton that [the defendant] presses upon us, we would have to conclude that the Supreme Court, when it decided Shelton, implicitly abandoned the principles that animated its decision in Scott. . . . As Shelton intended to apply Argersinger and Scott, not to overrule them, we decline to adopt the broad rule advocated by [the defendant].

United States v. Pollard, 389 F.3d at 104-05. The Fourth Circuit held: "According to the bright-line,

'actual imprisonment' rule of Argersinger and Scott, [the defendant's] right to counsel was not

violated here because he received a stand-alone sentence of probation, rather than a

suspended prison term coupled with probation." United States v. Pollard, 389 F.3d at 105

(citing Scott v. Illinois, 440 U.S. at 373-74).

### 3.    Court's Discretion to Consider Past Criminal Conduct.

The United States Sentencing Guidelines provide that the district court may consider "the

criminal conduct underlying any conviction that is not counted in the criminal history score" when

assessing the adequacy of the defendant's criminal history category. U.S.S.G. § 4A1.2 application

n.6. See United States v. Concha, 294 F.3d 1248, 1254 n.5 (10th Cir. 2002)(stating that "the use of

conduct underlying an invalid conviction is specifically permitted during sentencing in determining

whether to depart on the basis of inadequate criminal history"); United States v. McClennon,

No. 92-1049, 1993 U.S. App. LEXIS 14792, at *8 (10th Cir. June 11, 1993)(stating that, "even if

defendant's counsel had successfully shown below that the juvenile conviction was constitutionally invalid, it would still have been within the discretion of the district court to impose a sentence reflecting the seriousness of defendant's past criminal conduct.").  The Tenth Circuit has stated that, "of course, under the Guidelines themselves the district court remains free to find that a defendant's criminal history score incorporating an uncounseled misdemeanor sentence 'over-represents the seriousness of [his or her] criminal history or the likelihood that the defendant will commit further crimes' and, on that basis, depart from the Guidelines' suggested sentencing range as the court sees fit."  United States v. Jackson, 493 F.3d 1179, 1185 (10th Cir. 2007).

18 U.S.C. § 3661 provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.  See United States v. Watts, 519 U.S. 148, 151 (1997).  According to the Supreme Court, 18 U.S.C. § 3661 is the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."  United States v. Watts, 519 U.S. at 151-52.  The Supreme Court distinguished the different limitations on the presentation of evidence at trial and at sentencing: "Highly relevant -- if not essential -- to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."  Id. (quoting Williams v. New York, 337 U.S. 241, 247 (1949)). The Supreme Court noted that, "under the pre-Guidelines sentencing regime, it was 'well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted.'"  United States v. Watts, 519 U.S. at 152 (quoting United States v. Donelson, 695 F.2d 583, 590 (D.C. Cir. 1982)(Scalia, J.)).

The Supreme Court in United States v. Watts then turned to the Guidelines.  The Supreme Court acknowledged that the Guidelines, like 18 U.S.C. § 3661, articulate "in sweeping language the conduct that a sentencing court may consider in determining the applicable guideline range." United States v. Watts, 519 U.S. at 152-53 (citing U.S.S.G. § 1B1.3).  The Supreme Court appeared to be persuaded by the Guidelines' conclusion that, at least for offenses involving "a pattern of misconduct that cannot readily be broken down into discrete, identifiable units that are meaningful for purposes of sentencing," U.S.S.G. § 1B1.3 cmt. background, "relying on the entire range of conduct, regardless of the number of counts that are alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines for these offenses." United States v. Watts, 519 U.S. at 153 (citing U.S.S.G. § 1B1.3 cmt. background).  Considering 18 U.S.C. § 3661 and the Guidelines in totality, the Supreme Court stated: "In short, we are convinced that a sentencing court may consider conduct of which a defendant has been acquitted." United States v. Watts, 519 U.S. at 154.  In United States v. Booker, the Supreme Court expressly rejected any argument that its holding was inconsistent with its earlier holding in United States v. Watts.  See United States v. Booker, 543 U.S. 220, 240 & 240 n.4 (2005). In United States v. Magallanez, 408 F.3d 672 (2005), the Tenth Circuit held that United States v. Booker had not changed the district court's enhancement-findings analysis and that United States v. Watts retained vitality.  See United States v. Magallanez, 408 F.3d at 684-85.

## ANALYSIS

The PSR calculated Madrid-Gomez' offense level at 10 and his criminal history category at category V, establishing a guideline imprisonment range of 21 to 27 months.  Pursuant to 11(c)(1)(C) of the Federal Rules of Criminal Procedure and 5K3.1 of the United States Sentencing Guidelines, the Court accepts the plea agreement, which stipulates to an offense level of 9, as the

Court is satisfied the agreed offense level departs for justifiable reasons.  An offense level of 9 combined with a criminal history category of V establishes a guideline imprisonment range of 18 to 24 months.  Madrid-Gomez objects to the criminal history points assessed against him in paragraph 21 of the PSR for a misdemeanor DUI conviction resulting in a sentence of probation, because he was not represented by counsel.  He also objects to the criminal history point assessed against him in paragraph 29 of the PSR for committing his current offense within two years of his release from custody, because the United States Sentencing Commission has recently voted to delete the recency-points provision in the Guidelines.   Madrid-Gomez also moves for a downward departure and a variance because he argues his criminal history has been over-represented.  Because the PSR correctly calculated Madrid-Gomez' criminal history points in accordance with the Guidelines, the Court will overrule his objections to paragraphs 21 and 29 of the PSR.  Because the Court does not believe that Madrid-Gomez' criminal history has been substantially over-represented, the Court will deny the request for a downward departure.  The Court, however, finds that a slight variance is appropriate here and will impose a sentence of 16 months.

I.      **THE COURT WILL OVERRULE MADRID-GOMEZ' OBJECTIONS TO THE PSR'S CALCULATION OF HIS CRIMINAL-HISTORY POINTS.**

Madrid-Gomez raises two objections to his criminal history points as calculated in the PSR. First, he objects to the DUI conviction in paragraph 21 of the PSR because he was not represented by counsel.  Second, he objects to the 1 point assessed against him pursuant to U.S.S.G. § 4A1.1(e) because the United States Sentencing Commission has voted to recommend deletion of that provision of the Guidelines.  The Court has carefully considered the objections, but because the Court finds that the PSR correctly applied the Guidelines, the Court will overrule the objections.

### A.    THE COURT WILL OVERRULE MADRID-GOMEZ' OBJECTION TO PARAGRAPH 21 OF THE PSR.

In his sentencing memorandum, Madrid-Gomez objected to paragraphs 21 and 23 of the PSR because, according to Madrid-Gomez, he was not represented by counsel during either conviction. At the hearing, Madrid-Gomez withdrew his objection to paragraph 23 because the addendum to the PSR presented evidence that he had a public defender assigned to him for the conviction in paragraph 23.[3]  Madrid-Gomez, however, did not withdraw his objection to the 1 point assessed against him for a DUI conviction in paragraph 21 of the PSR, because, he argues, he was not represented by counsel and did not waive his right to counsel.  The Court notes that the United States failed to address in its written response whether the Court may consider an uncounseled state

---

[3] The Court expressed concern at the hearing over Madrid-Gomez' withdrawal of the objection, because in the docket sheet that Probation Officer Sharla Koch attached to the addendum, which she received from the Hendry County Circuit Court Clerk's Office in Labelle, Florida, regarding Madrid-Gomez' conviction in paragraph 23, it reflects that Madrid-Gomez was assigned a public defender on March 14, 2004, but the entry for March 26, 2004 states: "Defendant appeared pres. w/o atty for no trial, adjudicated guilty."  Addendum to the Presentence Report.  Because Mr. Medrano stated he withdrew the objection, the Court will only consider the objection to paragraph 21 of the PSR.

> THE COURT: It looks like defendant entered a plea of guilty, he appeared without an attorney, and indicated guilty.
>
> MR. MEDRANO: As the Court's well aware, in New Mexico, once a public defender is appointed, the public defender will represent a defendant through completion of the case.  I'm not sure if Florida has a different policy where an attorney will advise somebody and then the person makes a decision to proceed with or without counsel.
>
> THE COURT: But in any case, you don't have an objection anymore to 23, you're objection is just to 21?
>
> MR. MEDRANO: That is correct, Your Honor.

Tr. at 5:4-15 (Court, Medrano).

misdemeanor conviction in a manner consistent with the Sixth Amendment's guarantee of the right to counsel. See United States v. Jackson, 493 F.3d at 1186 (noting a similar lack of argument from the United States in either United States v. Jackson or United States v. Cousins whether the district court could consider an uncounseled state misdemeanor conviction in sentencing). At the hearing, however, when presented with Ms. Koch's information from the Hendry County Circuit Court Clerk's Office that Madrid-Gomez was not represented the conviction in paragraph 21 of the PSR, Ms. Kastrin conceded: "We have additional evidence that confirms it," Tr. at 7:14-15, but argued that the Guidelines still allow the Court to consider uncounseled misdemeanors, see Tr. at 7:15-17.

For purposes of the Sentencing Guidelines, if a defendant proves that a Sixth-Amendment violation occurred, the prior conviction cannot be counted in his criminal history score. See United States v. Cisneros-Cabrera, 110 F.3d at 748 ("Most notably, Application Note 6 to Guidelines § 4A1.2 bars the consideration of convictions that 'have been ruled constitutionally invalid' for the purposes of determining a defendant's criminal history count."). An uncounseled conviction for a misdemeanor which does not result in a sentence of imprisonment, however, does not violate the Sixth Amendment, see Scott v. Illinois, 440 U.S. at 369, and, as the Supreme Court has instructed, "an uncounseled misdemeanor conviction, valid under Scott [v. Illinois] because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction," Nichols v. United States, 511 U.S. at 749, "such as under the advisory federal sentencing guidelines that assign criminal history points, and corresponding prison terms, based on the number and seriousness of a defendant's prior sentences, United States v. Jackson, 493 F.3d at 1182.

As this Court has previously found, "there is not a constitutional prohibition against counting all prior misdemeanor convictions in which the defendant has not been afforded counsel."

See United States v. Peshlakai, 618 F. Supp. 2d at 1325.  Here, Probation Officer Koch contacted the Hendry County Circuit Court Clerk's Office in Labelle, Florida, regarding Madrid-Gomez' conviction in paragraph 21 of the PSR, and was advised that he was not represented by counsel, nor does the record contain evidence of a waiver of his right of counsel.  See Addendum to the Presentence Report at 1.  PSR ¶ 21 states that Madrid-Gomez was convicted of the misdemeanor offense of driving under the influence and sentenced to a term of probation.  See PSR ¶ 21, at 5.  The Supreme Court has held that, absent a knowing and intelligent waiver, no person may be imprisoned for any length of time, regardless of the classification of the person's offense, unless that person was represented by counsel.  See Scott v. Illinois, 440 U.S. 367, 373-74 (1979); Argersinger v. Hamlin, 407 U.S. 25, 31 (1972).  By contrast, when a defendant is convicted without the assistance of counsel but is not sentenced to a period of incarceration, there is no Sixth Amendment violation and thus that conviction may be considered in subsequent sentencing proceedings. See Nichols v. United States, 511 U.S. 738, 748-49 (1994); M.L.B. v. S.L.J., 519 U.S. at 113 (stating that the right to counsel "does not extend to nonfelony trials if no term of imprisonment is actually imposed."); U.S.S.G. § 4A1.2 cmt. background ("Prior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed.").  According to paragraph 21 of the PSR, there was no incarceration time given for Madrid-Gomez' conviction for DUI.  He was sentenced to six months probation and a fine was imposed.

Madrid-Gomez argues that, after Alabama v. Shelton, only in a "fine-only" misdemeanor case does a defendant not possess the Sixth Amendment right to counsel.  Madrid-Gomez overstates the holding in Alabama v. Shelton, which found that the right to counsel turns on the presence of a term of imprisonment.  The Tenth Circuit, in United States v. Jackson, interpreted the Supreme

Court's holding in <u>Alabama v. Shelton</u> as perhaps extending what qualifies as imprisonment, but also found that "it confirmed that the presence of a Sixth Amendment violation still turns on the nature of the sentence imposed and, more specifically, on the presence of a term of imprisonment." 493 F.3d at 1182.  <u>See</u> <u>United States v. Molina-Barajas</u>, 47 Fed. Appx. 552, 555 (10th Cir. 2002) (stating that "[b]ecause defendant was imprisoned on the California conviction, there is no question he had a right to counsel under the Sixth Amendment.").  The Supreme Court's opinion in <u>Alabama v. Shelton</u>, by its very language, did not address the right to counsel in misdemeanor cases where a defendant receives a stand-alone probation sentence.  <u>See</u> 535 U.S. at 673 ("There is not so much as a hint, however, in the decision of the Supreme Court of Alabama, that Shelton's probation term is separable from the prison term to which it was tethered.  Absent any prior presentation of the position the State now takes, we resist passing on it in the first instance.").  In <u>United States v. Jackson</u>, the Tenth Circuit discussed the Fifth Circuit's finding that a sentence of probation is not a sentence of imprisonment, as contemplated by the Supreme Court in <u>Alabama v. Shelton</u>, and noted: "Though the issue is of course one we need not decide today, the Fifth Circuit's reasoning illustrates the continuing uniformity of circuit views regarding the focus of the right and remedy afforded by the Sixth Amendment."  <u>United States v. Jackson</u>, 493 F.3d at 1184.  The Court agrees with the Fifth Circuit's reading and believes that the Tenth Circuit would agree as well.[4]  Probation, without a sentence of imprisonment, does not require counsel.  Because, according to paragraph 21 of the PSR, no term of imprisonment was imposed, Madrid-Gomez' Sixth Amendment right to counsel was not violated and his conviction was not constitutionally infirm.   The Commentary to U.S.S.G. § 4A1.2 states: "Prior sentences, not

---

[4] The Supreme Court's decision to deny a writ of certiorari lends further support to the Court's position.  <u>See</u> <u>Perez-Macias v. United States</u>, 540 U.S. 994 (2003).

otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed." U.S.S.G. § 4A1.2 cmt. background. See United States v. Molina-Rascon, 296 Fed. Appx. at 655 (stating that "the background to USSG § 4A1.2 provides that prior uncounseled misdemeanor sentences where imprisonment is not imposed, such as Molina-Rascon's fine for shoplifting, count toward the criminal history score."). Madrid-Gomez' conviction in paragraph 21 of the PSR reflects an uncounseled misdemeanor where imprisonment was not imposed.  The Court may properly consider the conviction in the calculation of criminal history points, and therefore overrules Madrid-Gomez' objection to the 1 point added in paragraph 21.

**B.      THE COURT WILL OVERRULE MADRID-GOMEZ' OBJECTION TO PARAGRAPH 29 OF THE PSR.**

Madrid-Gomez also objects to the 1 point added to his criminal history score pursuant to U.S.S.G. § 4A1.1(e), because he illegally reentered the United States less than two years after his release from custody.  See PSR ¶ 29, at 9.  U.S.S.G. § 4A1.1(d) provides that 2 points should be added if the defendant committed the federal offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. U.S.S.G. § 4A1.1(e) provides that 1 point should be added if the defendant committed the federal offense less than two years after release from imprisonment and was given 2 points under § 4A1.1(d).  Madrid-Gomez argues that, on April 13, 2010, the United States Sentencing Commission voted to amend the Guidelines by deleting the recency points in § 4A1.1(e), and although the earliest the amendment can take effect is November, 2010, he urges the Court to disregard the recency point now.  While the Court shares the Commission's concern that recency points are not always good predictors of criminal history or past criminal activity, the Court must

calculate Madrid-Gomez' criminal history using the Guidelines as they currently are, not as they may be amended if Congress adopts the Commission's proposed amendment.  The Court, therefore, will not disregard the 1 point assessed to his score for recency pursuant to § 4A1.1(e), and will overrule Madrid-Gomez' objection to paragraph 29 of the PSR.

## II.     MADRID-GOMEZ' CRIMINAL HISTORY IS NOT SUBSTANTIALLY OVER-REPRESENTED.

Downward departures for over-representation of criminal history are appropriate if "the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."  U.S.S.G. § 4A1.3(b)(1).  Madrid-Gomez argues that his criminal history category of V over-represents his criminal history because of the inclusion of 1 point for his uncounseled DUI offense in paragraph 21 of the PSR, the 1 recency point in paragraph 29, and because 5 of the 11 criminal history points resulted from the same conviction, for which he received the original four-level increase in his offense level.  The Court carefully reviewed the calculation of Madrid-Gomez' criminal history points and does not believe that his criminal history has been substantially over-represented.  While the Court has some concern about the uncounseled misdemeanor, the Court notes that, even if it were not to consider the conviction in paragraph 21 of the PSR, and not assess to Madrid-Gomez' criminal history the 1 point allocated in that paragraph, his criminal history points would still be within the point-range establishing a category V criminal history.   And although the Court shares the concerns of the Commission with respect to the recency point, the Court does not believe that Madrid-Gomez' criminal history category substantially over-represents his criminal history.  The Court, therefore, will deny his request for a downward departure.

III.   **THE COURT WILL GRANT MADRID-GOMEZ' REQUEST FOR A VARIANCE.**

While the Court concludes that a downward departure is not appropriate because the Court believes that the PSR accurately and correctly followed the guidelines when calculating Madrid-Gomez' criminal history category, the Court has also taken account of his arguments in its consideration whether a variance is appropriate, and believes that, although his criminal history is not substantially over-represented, it is over-represented to some degree, and therefore some variance is appropriate.  The Court believes that a sentence more in line with an offense level of 9 and a criminal history category of IV, which establishes a guideline imprisonment range of 12 to 18 months is appropriate here.

Madrid-Gomez argues that he did not receive a standard fast-track offer to criminal offense level 8 because of his prior criminal history.  See Sentencing Memo. at 7.  According to the plea offer letter that he received from the United States, his projected offense level was 9, and thus he was not offered a standard fast-track plea agreement.  See Tr. at 21:24-22:6 (Medrano). Madrid-Gomez contends that, but for the over-representation of his criminal history, he would have received a standard fast-track plea agreement, and argues that the Court should consider this reality as a reason why a variance to a criminal history category of IV is appropriate.  See Tr. at 22:2-4. Ms. Kastrin, at the hearing, argued that defendants with a criminal history similar to Madrid-Gomez' criminal history only receive non-standard fast-track plea agreements and argued that Madrid-Gomez' case creates no disparity warranting a variance.  See Tr. at 24:5-13 (Kastrin).

The Court believes that Madrid-Gomez' criminal history is somewhat over-represented and places him at the borderline of category IV and category V.[5]  The Court believes, in part, that there

_____

[5] While the Court is reluctant to rely upon plea agreements that were not offered, the Court notes that an offense level of 8 and a criminal history category of V would provide a guideline range

-26-

is some over-representation, because the Court has some concerns about using recency as a good predictor of criminal history and past criminal activity, and shares the current Commission's concerns about the recency points.  The Court also recognizes that, although it is concerned with Madrid-Gomez' DUI convictions, the Court does not believe his criminal history can be viewed as violent or potentially violent, and therefore a sentence more consistent with category IV is appropriate.  The Guidelines indicate that a downward departure may be appropriate when the defendant is given points for uncounseled misdemeanors.  On the other hand, Madrid-Gomez' multiple DUI convictions indicate to the Court that he seems to have a pattern of criminal behavior, and thus the variance in this case should not be great.  After careful consideration, the Court believes that a sentence of 16 months reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  The Court's task, as a district judge, is not to come up with a reasonable sentence, but to arrive at one that balances those factors properly and fully; nevertheless, the Court believes that it is a more reasonable sentence than an 18-month sentence.  The Court also believes a sentence of 16 months is sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.

**IT IS ORDERED** that Defendant Miguel Madrid-Gomez' objections are overruled, his request for a downward departure is denied, and his request for a variance is granted.  The Court sentences Defendant Miguel Madrid-Gomez to 16 months in the custody of the Bureau of Prisons.

---

of 15 to 21 months, and a criminal history category of IV would provide a guideline range of 10-16 months.  Thus, a sentence of 16 months falls within the range of the standard fast-track agreement at either criminal history category.  While 16 months is at the high end, rather than the Court's usual practice to sentence at the low end when there are no aggravating factors, it does not appear that Madrid-Gomez should get the full benefit of a plea agreement not offered and be sentenced at the low end of the range.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory J. Fouratt
  United States Attorney
Lynn Wei-Yu Wang
Holland Kastrin
  Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Phillip P. Medrano
Federal Public Defenders Office
District of New Mexico
Albuquerque, New Mexico

      *Attorney for the Defendant*